MARATHON OIL COMPANY,
Petitioner,

v.

James E. STERNER, Respondent.

No. C–564.

Supreme Court of Texas.

April 21, 1982.

Rehearing Denied June 2, 1982.

Evan B. Glick, Houston, Mills, Shirley, McMicken & Eckel, Ross Citti, Galveston, for petitioner.

Brown & Todd, Gordon E. Davenport, Jr., Alvin, for respondent.

SPEARS, Justice.

James E. Sterner brought this suit against Marathon Oil Company to recover damages for personal injuries allegedly resulting from exposure to some unidentified gas while working on the Marathon premises. The primary issue before this court is whether the case was properly submitted to the jury on a *res ipsa loquitur* theory. The trial court found that there was some evi-

dence of negligence and submitted the case to the jury on a *res ipsa loquitur* theory. The jury found for Sterner on four special issues[1], and the trial court rendered judgment for Sterner. The court of civil appeals affirmed. 624 S.W.2d 198. We reverse the judgment of the courts below and render judgment that Sterner take nothing.

Sterner brought suit against Marathon alleging specific acts of negligence and *res ipsa loquitur.* The trial court submitted the case to the jury on a *res ipsa* theory. Marathon objected to the jury instructions on the basis that there was no evidence that the instrumentality which caused the accident was under the control of Marathon or that Marathon was guilty of any negligence. Marathon did not object to the form of the instructions.

The jury found for Sterner on all issues and awarded damages of $25,000. Marathon filed a motion for judgment n. o. v. which was overruled by the trial court. The court then rendered judgment on the verdict for plaintiff Sterner. The court of civil appeals affirmed, holding that there was some evidence which would allow the jury to conclude that the accident was one that would not ordinarily happen absent negligence and that the instrumentality was under the control of Marathon.

Marathon asserts that there is no evidence to support the jury findings. In considering this contention, we must view the evidence in the light most favorable to the verdict, considering only the evidence and inferences that support the judgment. *Sagebrush Sales Company v. Strauss*, 605 S.W.2d 857 (Tex.1980).

In November 1975, Sterner was an employee of Morrison Construction Company. Morrison Construction had been hired by Marathon to perform a "turnaround" job at Marathon's plant in Galveston. A "turnaround" job is a procedure in which a plant shuts down one of its units or "vessels" for repair and maintenance work. The "vessels" involved in this particular turnaround were all stationary sealed towers used to process different gasses. On a turnaround job, Marathon is responsible for shutting down each vessel or unit and preparing it for work. The pipelines leading into the vessel are usually "blinded" and then purged with steam. "Blinding" is done by inserting a metal plate between the joints of a pipe to prevent any gas or chemical from passing through the pipe.

Before any person can enter a vessel, the vessel must have posted on it a safety permit issued by a Marathon safety engineer. The permit indicates that a Marathon safety engineer has checked the vessel with a gas "sniffer" to make sure that there is no gas in the unit. Each vessel has at least three or four manways or openings through which a person can enter the vessel to work. These manways are "sniffed" before every work shift and then are sealed and secured after the turnaround is completed.

On November 15, Sterner and a colleague, Charles Irvin Keeler, were working near the top of a vessel, sealing it after it had been cleaned and repaired. Sterner and Keeler would alternate going into the vessel to work, with one person working inside for approximately thirty minutes. The other person would stay outside as the "hold man." The hold man's job was to pass tools to the person inside and to get help in case of accident or illness.

At about 4:00 p. m., and before Sterner relieved him inside the vessel, Keeler noticed something that smelled like musk oil. Soon after, Sterner relieved Keeler and went into the vessel. Keeler did not mention the smell.

Sterner stated that five or ten minutes after he went into the vessel he noticed a "sour, rotten, musk oil" smell. He ignored it for a few seconds, but it became stronger. He said that he then developed a sudden

---

1. The jury found substantially as follows:

    (1) Sterner sustained an injury on November 15, 1975 on Marathon's premises;

    (2) the escape of gas or gasses was due to the negligence of Marathon;

    (3) such negligence was a proximate cause of Sterner's injuries; and

    (4) $25,000 would fairly and reasonably compensate him. Only issue number 2 was challenged on appeal by Marathon.

and severe headache, started vomiting and lost control of his bowels. Keeler told Sterner to get out, and they both descended to the ground as quickly as possible. Sterner continued to vomit and Keeler vomited after they reached the ground. Sterner experienced headaches and diarrhea for approximately a week. Keeler was ill the next day but did not develop headaches or diarrhea.

Sterner's foreman immediately brought Jack May, Marathon's safety engineer, to check the vessel for gas. Sterner testified that he heard May say that there was something in the unit and that he did not want anyone else back in the vessel until it could be checked properly. May testified that he then used a "sniffer" to check the vessel, but that he found no trace of gas. The vessel was apparently reopened for work an hour later.

May suggested that Sterner and Keeler go to the doctor that day. Keeler never went to see a doctor, but Sterner saw his doctor the next day. That doctor did not testify at the trial. Over the next few years, Sterner went to see at least two other doctors about his condition. He complained of difficulty in breathing, trouble doing the strenuous labor required by his job, post-nasal drainage, high blood pressure and headaches.

Dr. Zionts, who examined Sterner two years after the accident, testified that the chronic lung problems were due to smoking and that Sterner had high blood pressure and nasal problems before the accident. The doctor also stated that if Sterner had been exposed to gas as he claimed, the gas may have and probably did aggravate his pre-existing problems.[2]

Dr. Zionts based his testimony solely on Sterner's assertions that he had been gassed and that his difficulty in breathing and performing strenuous work had increased significantly after the incident. The doctor stated that if he knew the exact gas involved, he could tell whether the symptoms Sterner complained of had been caused by the gas. However, since Sterner had never told him what gas could have been involved,

Dr. Zionts testified that it "could have been somebody's perfume for all I know."

■ The term *"res ipsa loquitur"* means "the thing speaks for itself." As the translation implies, *res ipsa* is used in certain limited types of cases when the circumstances surrounding the accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a finding. *Mobil Chemical Company v. Bell*, 517 S.W.2d 245 (Tex.1974); *see* Morris, *Res Ipsa Loquitur in Texas*, 26 Tex.L.Rev. 257 (1948). The doctrine is applicable only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Harmon v. Sohio Pipeline Company*, 623 S.W.2d 314 (Tex.1981); *Honea v. Coca-Cola Bottling Company*, 143 Tex. 272, 183 S.W.2d 968 (1944). Unless both factors are present, the jury cannot reasonably infer from the circumstances of the accident that the defendant was negligent. *Bond v. Otis Elevator Company*, 388 S.W.2d 681, 686 (Tex.1965).

We hold that Sterner failed to produce any evidence that the accident was the type usually associated with negligence. As the court stated in *Hogue v. El Paso Products Company*, 507 S.W.2d 246, 250 (Tex.Civ. App.—El Paso 1974, writ ref'd n. r. e.):

Appellant contends that the character of the accident and the circumstances attending it lead reasonably to the belief that in the absence of negligence the accident would not have occurred . . . . [T]he doctrine [*res ipsa loquitur*] does not apply under the meager proof in this case where none of the parties knew what caused the gassing. Escaping gas in the vicinity of a complex chemical plant could be due to an unexpected and unforeseeable mechanical failure or it could be due to negligence.

■ Even if Sterner had shown that the accident was the type that usually would not occur without negligence, he has not

---

**2.** Sterner's pre-existing problems included: a neck disc injury; four broken ribs; a knife wound in the chest; sinus and allergy problems that resulted in a nasal polypeptomy; high blood pressure; various problems related to being overweight; severe depression requiring hospitalization and use of at least fifty-one electric shock treatments; chronic and sometimes debilitating anxiety attacks; twenty years of smoking at least one pack of cigarettes a day; and drinking eight to ten beers a day.

shown that the instrumentality causing the injury was in the control of Marathon. The requirement of control is necessary to trace the negligence back to the defendant. It is sufficient that the defendant be in control of the instrumentality at the time that the negligence inferable from the accident probably occurred. The possibility of other causes for the accident besides the defendant's negligence does not have to be eliminated, but the likelihood of other causes must be so reduced that the jury can reasonably find that the negligence, if any, was committed by the defendant. *Mobil Chemical Company v. Bell, supra* at 251.

Sterner was in the process of closing the vessel after it had been cleaned and repaired by Morrison Construction employees when he encountered the gaseous substance. Morrison Construction had been making repairs on the vessel for almost a week. Marathon's only responsibility during this time was to check the vessels before every shift with a "sniffer." It is undisputed that the vessels had been sniffed before Sterner began his shift. Therefore it is at least as probable that the negligence, if any, can be attributed to a Morrison Construction employee working in the vessel during the previous week. When the plaintiff's evidence only shows it is equally probable that the negligence was that of another, the court must direct the jury that plaintiff has not proved his case. *Mobil Chemical Company v. Bell, supra* at 253.

We reverse the judgment of the courts below and render judgment that Sterner take nothing.