Carl S. SCRONCE, et ux.,
Plaintiffs-Appellants,

v.

HOWARD BROTHERS DISCOUNT
STORES, INC., et al.,
Defendants-Appellees.

No. 81–2420.

United States Court of Appeals,
Fifth Circuit.

July 9, 1982.

John Milutin, Houston, Tex., for plaintiffs-appellants.

Vincent W. Rehmet, Houston, Tex., for Howard Bros.

David B. Weinstein, Dana G. Kirk, Houston, Tex., for Steyr-Daimler-Puch of America Inc., etc.

Marc A. Sheiness, Houston, Tex., for Stoeger Arms, Stoeger Ind. and Stoeger Inc.

Before CLARK, Chief Judge, GEE and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

Appellant Scronce was injured when the 30–06 Steyr Mannlicher rifle he was sighting in at a shooting range exploded, injuring his face and right hand. Mr. Scronce had purchased the rifle some years earlier from an individual, Owen Wood, who had bought the gun from Howard Bros. Discount Stores, Inc., in Monroe, Louisiana. The rifle was manufactured by Steyr-Daimler-Puch, A.G. (Steyr), imported by Stoeger Arms Corporation (Stoeger), and sold by Stoeger to Howard Bros. At the time of the accident, the rifle had been fired less than 50 times.

Scronce testified that the rifle exploded as he fired the third of three shots on the day of the accident. It is undisputed that it was possible to fire the rifle without the bolt head in place, that it would invariably explode when so fired, that this type of malfunction could not have happened with the usual "one-piece" bolt design, and that no warnings accompanied the sale of the rifle. However, Scronce testified further that when he arrived at the shooting range the bolt was inserted in the chamber of the rifle, that he never removed it from the rifle or the bolt head from the bolt while on the range, that the explosion occurred on the third shot, and that he did not remove the bolt or bolt head from the rifle between shots. Experts presented by both defendants and plaintiff testified that it was impossible for the accident to have happened in the way that Scronce testified because the bolt head could not disengage from the bolt unless removed from the rifle. According to the testimony of Mrs. Scronce, after the accident she discovered the bolt head in a lower front pocket of the overshirt Scronce was wearing on the range. The trial court directed a verdict for all defendants at the close of all the evidence.

The standard for granting a directed verdict was established in the case of *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969):

> On motions for directed verdict ... the court should consider all the evidence—not just the evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach differing conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict ... should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict.

*Defective Product*

■ Scronce brought this diversity case on theories of strict liability and negligence. Under governing Texas law, in order to establish a cause of action based on strict liability, Scronce must prove four basic elements: (1) the product is defective; (2) the product reached the consumer without substantial change from the time it left the possession and control of the manufacturer; (3) the defective condition of the product rendered it unreasonably dangerous; and

(4) the unreasonably dangerous condition of the product caused injury to the user. *Restatement (Second) of Torts* § 402(a) (1965); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967).

All parties concede the presence of element (2), that the rifle was without substantial change at the time of the accident. It may be that there is room for doubt about elements (1) and (3), the presence of a defect and resulting unreasonable danger. On this record, however, there is no room for serious doubt that proof of element (4), causation, is wanting. The sole direct evidence of how the accident actually came about, that of Mr. Scronce himself, was that he arrived at the range with the bolt in the rifle, that he fired it twice without difficulty, and that as he fired a third time, it exploded. Undisputed in the record is that if this rifle be fired without the bolt head, it will *invariably* explode. Thus, necessarily, the bolt head was in during the first two firings. Mr. Scronce testified that he did not, or at any rate did not recall, removing the bolt at any time after he came to the range and before his injury. Thus we are left, if Scronce's testimony be credited, with the practical certainty that between the second and third shots the bolt head was removed and the bolt replaced without it, leaving the rifle sure to malfunction on the third shot, as it did.

■ No version of the accident that accepts the account of Mr. Scronce explains it. Many that do not might do so: that the bolt head had been removed and the bolt inserted without it before Mr. Scronce came to the range, the rifle exploding on the first shot; that the barrel of the gun was obstructed, causing the explosion; that the explosion was caused by a defective round; that Scronce removed the head after the second shot and inadvertently reinserted the bolt with it absent. These are, one and all, no more than speculation, without support in the evidence. All that is certain is

that the accident cannot have come about as Mr. Scronce said it did: on the testimony of all experts, including his witness, the bolt head could not have disengaged while the bolt assembly was mounted in the gun, as he said it was at all times.[1] Even if the bolt design was a design defect, it is well settled that a plaintiff must prove that the defect produced his injuries. *Technical Chemical Co. v. Jacobs*, 480 S.W.2d 602, 604 (Tex.1972). Failure on a plaintiff's part to produce credible evidence of causation makes a directed verdict in favor of defendant proper. *Shumate & Co. v. National Ass'n of Securities Dealers, Inc.*, 509 F.2d 147, 153 (5th Cir. 1975). Here Scronce failed to prove that a defect in the bolt design was responsible for the explosion. The evidence showed that the accident could not have happened in the way in which Scronce testified it did; our inquiry necessarily ends there.

*Negligence—Warnings*

■ Scronce argues that the lack of warning as to the consequences of firing without the bolt head raised a fact issue to be decided by the jury. Appellees assert that a warning that the rifle would explode if fired without the bolt head in place would have made no difference in this case, since Scronce testified that he never inserted the bolt into the rifle without the bolt head attached to it. Further, Scronce testified that he had knowledge of bolt-action rifles and that he had literature about the rifle in question at home. He further testified that he had been using firearms for some 30 years, had disassembled, reassembled, repaired, and even customized firearms before. Again, Scronce failed to prove causation, an essential element in his cause of action based on inadequate warning.

There is no indication in the briefs that the doctrine of res ipsa loquitur was invoked in this case. At all events, the mech-

---

1. In so observing, we hasten to add that we do not in any sense imply that Mr. Scronce's testimony is disingenuous. The phenomenon of diminished recall of events immediately preceding a sudden physical shock is matter of com-

mon knowledge. We simply cannot, however, assume events favorable to his cause against his testimony, any more than we can speculate about such scenarios as we note in text above against it.

anism was in Mr. Scronce's control at all relevant times. *See, Marathon Oil Co. v. Sterner,* 632 S.W.2d 571 (Tex.1982). It appears that the lack of adequate warning was the only ground that Scronce said constituted negligence. Though the explosion itself is circumstantial evidence of either a defect or negligence on the part of someone, Scronce failed to provide any other credible evidence of such and failed to prove all necessary elements of the causes of action pled.

AFFIRMED.

GARWOOD, Circuit Judge, dissenting.

I respectfully dissent, for I believe there was some evidence from which the jury could find that the explosion was caused by the allegedly defective design of the rifle, which allowed it to be fired without the bolt head in place and allowed the bolt head to become separated too easily from the bolt when out of the barrel.

The following matters are affirmatively established beyond question: the rifle did explode when Scronce fired it; it could and would fire without the bolt head; if the rifle were fired without the bolt head, it *would* inevitably explode as it in fact did explode; the bolt was removable and designed so that when outside the rifle its head could be detached, and it could be inserted without the head.

Additionally, there was evidence affirmatively establishing that when the rifle exploded it was fired *without* the bolt head, and there was no evidence (or no evidence other than of the most attenuated circumstantial nature) to the contrary. The defendants' expert Freer testified "there is no question at all but that the bolt head was not on the bolt body at the time the gun was fired," that "we could determine that by the condition of the bolt when I examined it," and that examination of the bolt head showed no damage to it. Another expert of defendants, McDaniel, testified to the same effect, as did plaintiff's expert McDonald (who also testified that the bolt body, minus the head, was damaged and the base of a cartridge was impaled on the

broken firing pin). Again, there was simply no serious dispute about this, it was established by reliable physical examination and all parties so recognized.

The majority hypothesizes several possible causes of the explosion, viz: (i) defective ammunition; (ii) obstruction of the rifle barrel; (iii) the rifle being fired without the bolt head.

No one connected with the case has suggested any other possibility, and none is raised by the evidence.

In view of the virtually undisputed evidence that at the time of the explosion the rifle *was* fired without the bolt head, and the further evidence that such firing would inevitably cause the rifle to explode as it did, the jury was certainly at liberty to disregard hypotheses (i) and (ii) above, and to conclude that some form of hypothesis (iii) was correct. This hypothesis is also circumstantially slightly supported by the testimony of plaintiff's wife that after the explosion she found the detached bolt head in a pocket of the shirt plaintiff was wearing when the rifle exploded.

Additionally, as to hypothesis (i), there not only was no evidence of defective ammunition, but before trial all parties signed an agreed motion to dismiss the ammunition manufacturer reciting "all parties are in agreement that the ammunition in use at the time of the occurrence made the basis of this lawsuit ... was not defective." Respecting hypothesis (ii), there is no suggestion in the record to support it, and surely the defendants' experts who examined the rifle would have suggested this possibility were it consistent with the physical evidence. Also, the bolt body had a cartridge base impaled on it, as above noted, which is not suggestive of an obstructed barrel. Moreover, the rifle was in evidence, and it presumably shows no signs of having been fired with the barrel obstructed. In sum, it is evident that the obstructed barrel hypothesis was not more specifically discounted only because it was so obvious to all that it was not a possible alternative.

Plainly, then, the jury could conclude—indeed, was virtually required to conclude—that the cause of the explosion was the rifle being fired without the bolt head. But how and when did this happen?

The majority says the jury was not free to find that, between the second and third shots, the bolt head, being attached to the bolt in the barrel, came loose and fell out of the barrel, because all the experts say this physically could not happen. I agree. The majority also rejects the hypothesis that the bolt was initially inserted in the barrel without the head, but did not cause an explosion until the third round, because, as all the experts testified, it would inevitably cause an explosion on each round. Again, I agree. Likewise, the majority rejects the hypothesis that the explosion occurred on the first round, the bolt having been inserted without the head, because Scronce unequivocally testified, without retraction, that the explosion did not occur until the third round. I cannot fault this conclusion, for a party should not be allowed to recover on a theory at variance with his clear and deliberate testimony of what he actually observed, where there is no basis on which to question his ability to do so accurately.[1]

There is, however, one remaining hypothesis, namely that the explosion occurred on the third shot, Scronce having removed the bolt from the barrel after the second shot (perhaps putting it in his shirt pocket) and inadvertently reinserted it without the bolt head, the head having become disengaged from the bolt while the bolt was out of the barrel. In this connection, it may be noted that plaintiff's expert testified the bolt head "will readily come loose outside the gun." The majority's rejection of this hypothesis appears to be based on Scronce's testimony that he did not remove the bolt between the second and third rounds. However, as I read the testimony, Scronce was saying that he *thought* he did not remove the bolt, but that he was not sure and really did not remember, as opposed to saying that he was positive he did not remove it. Scronce also testified that it was not unusual at the range to remove the bolt between rounds on various occasions.[2] The majority correctly notes that "diminished recall of events immediately preceding a sudden physical shock is a matter of common knowledge." In this instance, the jury could have applied such common knowledge and decided that Scronce's testimony was not inconsistent with the hypothesis that the bolt was removed between the second and third shots.

Accordingly, the case was in this posture. It was undisputed that the rifle exploded when Scronce fired it, that it *could* be fired without the bolt head, and that if so fired it *would inevitably* explode as it did. All hy-

---

1. By the same reasoning, we can reject the hypothesis that there was more than one explosion.

2. Scronce's testimony was as follows:

"Q Did you ever remove the bolt from the rifle while you were at Carter's [the shooting range]?

"A Not to my knowledge, no, sir.

"Q Are there any safety precautions that you take in the firing range that might occasion you to remove the bolt?

"A Yes, sir. When they have a loud speaker system, a warning system which gives people an opportunity to put up targets. And when people are putting up targets, everybody is required to open their bolt. And sometimes on occasions like that, you would remove the bolt.

"Q Have there ever been times at Carter shooting range or other shooting ranges during such instances that you have removed the bolt from the gun?

"A Yes.

"Q When those things are done, what do they generally do with the bolt?

"A Usually lay it beside the gun on the bench.

"Q Do you have any recollection of doing that on October 3, 1977?

"A No, sir. *I don't remember* whether I removed it or whether it was left in the gun. I believe it was left in the gun, but *I'm not sure.*

"Q That is your best recollection?

"A Yes, sir." [Emphasis added.]

He also testified:

"Q Do you have, Mr. Scronce, any recollection of having removed the bolt from the gun between the second and third shot for any reason?

"A No, sir, I don't have any recollection of doing that."

potheses for the cause of the explosion other than the rifle being fired without the bolt head were effectively eliminated. And, the expert testimony and physical evidence clearly showed that when the rifle exploded it was in fact fired without the bolt head. In these circumstances, the jury would normally be free (if not compelled) to conclude that when it exploded the rifle was in fact fired without the bolt head, and that this was the cause of the explosion. Perhaps the jury could not so find if Scronce's testimony, taken with other undisputed evidence, was affirmatively inconsistent with the bolt head being out of the rifle at this time. But there is no such clear inconsistency. The hypothesis that between the second and third rounds Scronce removed the bolt, that the bolt head became disengaged, and that he thus inadvertently inserted the bolt without the head, has not been eliminated. That being the case, the jury was free to find, based on the physical facts and clear and positive expert testimony, that the rifle was fired without the bolt head when it exploded, and to infer that this was the cause of the explosion.