788 F.2d 321
 Prod.Liab.Rep.(CCH)P 10,984
Lane M. McGONIGAL, Individually and As Father and Next
Friend of Kevin M. McGonigal and Connie L. McGonigal,
Individually and As Mother and Next Friend of Carrie A. Hamm
and Susan M. Hamm and Mark M. Thompson, Plaintiffs-Appellants,
v.
GEARHART INDUSTRIES, INC., Defendant,
Day & Zimmerman, Inc., etc., Defendant-Appellee.
 No. 85-2187.
 United States Court of Appeals,
Fifth Circuit.
 April 30, 1986.
 
 Nicholas Gilman, Washington, D.C., for plaintiffs-appellants.
 John R. Mercy, Atchley, Russell, Waldrop & Hlavinka, Norman C. Russell, Texarkana, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Eastern District of Texas.
 Before JOLLY and HILL, Circuit Judges, and HUNTER,* District Judge.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 This case is on appeal to review the district court's dismissal of the appellants' products liability claim and directed verdict of the appellants' negligence claim against the appellee, Day & Zimmerman, Inc. These claims arise out of an accident in which two of the appellants, both sergeants in the United States Army, were seriously injured when one of them threw a defective hand grenade during training. Because we find that the district court properly dismissed the appellants' product liability claim, but improperly granted Day & Zimmerman a directed verdict on the negligence claim, we affirm in part and vacate and remand for further proceedings in part.
 
 
 2
 * On September 2, 1981, the appellants, Lane M. McGonigal and Mark M. Thompson, sergeants in the 82nd Airborne Division, were supervising a hand-grenade requalification exercise at Fort Bragg, North Carolina. Toward the end of the exercise, in order to avoid having to preserve partially unsealed grenades, Lt. Smeltzer, McGonigal's commanding officer, ordered eleven hand grenades that had not been expended from an opened crate to be thrown. The throwing of these last grenades began from pit number one, and the occupants of pits one and two threw their grenades without incident.
 
 
 3
 McGonigal and Thompson each had a grenade, the outsides of which Sergeant Thompson inspected. Sergeant McGonigal pulled the safety pin and threw his grenade with his right hand. Instead of the usual four- to five-second delay before detonation, the high explosive blast occurred almost instantly after activation of the primer when the grenade was only a few inches from McGonigal's fingers. Sergeant McGonigal's hand and right arm were blown off, and shrapnel was distributed throughout his body and head, destroying his right eye and leaving shrapnel deeply embedded in his inner brain. Shrapnel also entered Sergeant Thompson's right leg in the groin area, severing his femoral artery. According to eyewitness accounts, Sergeant McGonigal handled and threw the grenade properly.
 
 
 4
 Lane M. McGonigal, Donna L. McGonigal and Mark M. Thompson (collectively the McGonigals) filed their complaint on October 29, 1982, against Gearhart Industries, Inc. (Gearhart), the manufacturer of the grenade, and Day & Zimmerman, Inc. (Day & Zimmerman), the assembler and inspector of the grenade.[1] On July 25, 1983, Gearhart filed a third-party petition against Pengo Industries, Inc., (Pengo),[2] and on September 10, 1984, the United States intervened under the Medical Care Recovery Act, 42 U.S.C. Secs. 2651-2653 for $56,286.30, solely against Gearhart.
 
 
 5
 A jury trial began on February 18, 1985. On February 20, 1985, during the third day of trial, Gearhart and Pengo settled with the McGonigals and the United States, leaving only the McGonigals and Day & Zimmerman still active in the lawsuit. After the settlement was announced in court, the McGonigals and Day & Zimmerman stipulated that the fuse was defective and unreasonably dangerous, and that the defect occurred in the manufacturing process at Gearhart.
 
 
 6
 The district court, sitting in diversity jurisdiction, held that the substantive law of Texas applied to this action. The court denied Day & Zimmerman's motions for summary judgment and motions to dismiss based on the "government contractor defense" and the Feres-Stencel doctrine. See Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).
 
 
 7
 After the McGonigals rested their case, Day & Zimmerman moved for a directed verdict on the negligence claim. Day & Zimmerman argued that the McGonigals failed to show a duty or standard of care; that having failed to show such a duty or standard, the McGonigals could not show that Day & Zimmerman violated that duty or standard of care. Moreover, Day & Zimmerman asserted that the McGonigals had failed to present direct evidence of Day & Zimmerman's alleged negligence. The court granted the motion for a directed verdict on the negligence claim and dismissed the case.
 
 
 8
 In explaining the directed verdict to the jury, the district court reiterated that the McGonigals initially sued Day & Zimmerman under two theories: products liabilities for a defective fuse, and negligence in inspection. The court stated that when the McGonigals settled their claims against Gearhart, Day & Zimmerman was relieved of liability under the product liability claim.[3] The court then stated that the McGonigals failed to present direct evidence of Day & Zimmerman's negligence in failing to detect the defective grenade during its x-ray inspection. The x-rays taken of the defective fuse were destroyed in the normal course of Day & Zimmerman's business; since the McGonigals were unable to produce those x-rays, there was insufficient proof of negligence. The court thus concluded that Day & Zimmerman could be found negligent only if Day & Zimmerman did "something that an ordinary prudent manufacturer would not have done or failed to do something that they should have done." The court concluded that
 
 
 9
 if there was an obligation on the part--or duty on the part of the defendant to be 100% accurate, then this case could proceed. But if there is no duty for them to be 100% accurate, if there is a duty commensurate with the danger, if there is a duty to exercise reasonable care in light of the dangers and consequences, then, as I have ruled, that that is the applicable standard in this case.
 
 
 10
 The court held that the evidence introduced at trial did not support the conclusion that the accident would not have occurred but for the negligence; had the McGonigals been able to show that a certain percentage of the grenades were negligently passed through the inspection process, the court stated, sufficient evidence of negligence would have been provided. The McGonigals filed a timely notice of appeal.
 
 II
 A.
 
 11
 The McGonigals raise two contentions on appeal. First, they argue that the district court erred in dismissing the products liability theory because Day & Zimmerman is a seller under Texas law and thus subject to strict liability for the McGonigals' injuries. Second, the McGonigals contend that their negligence claim was sufficiently supported by circumstantial evidence if the district court had properly applied the doctrine of res ipsa loquitur.
 
 B.
 
 12
 We first turn to the McGonigals' contention that the district court erred in dismissing the products liability claim. Day & Zimmerman, they contend, should have been held liable as a seller under Texas law, and thus subject to the strict liability provisions of section 402A of the Restatement (Second) of Torts, because, after inspecting the grenades, Day & Zimmerman placed the assembled grenades into the stream of commerce as part of a commercial venture.
 
 
 13
 Day & Zimmerman, while not disputing its strict liability as a seller, nonetheless contends that the McGonigals waived the strict liability claim at trial. After reviewing the record, we agree. On February 20, after the McGonigals settled their claims against Gearhart, counsel for both the McGonigals and Day & Zimmerman discussed with the court the further proceedings in this case. At that time, both the court and counsel for Day & Zimmerman asked counsel for the McGonigals whether the McGonigals were going to continue to pursue the product claim or only try the case based on their negligence theory. During this discussion, the court said:
 
 
 14
 You have the situation absent that where the jury will be required to compare causation, negligence and the product. The defendant, this defendant has the absolute right to secure findings concerning the amount of causation and if the jury found that the product was, in fact,--the fuse was not in fact defective, then there's no way that you can get a judgment against this defendant because there is nothing this defendant could have done that could have been the proximate cause of the event (emphasis added).
 
 
 15
 COUNSEL for the McGonigals: Agreed.
 
 
 16
 Counsel for both parties then agreed to stipulate that the grenade was defective when it left Gearhart's plant. The court accepted this agreement, and said:
 
 
 17
 As I see the plaintiffs' case, you are proceeding on a pure negligence theory, basically res ipsa, sealed container case against Day & Zimmerman.
 
 
 18
 COUNSEL for the McGonigals: Yes, sir.
 
 
 19
 These discussions occurred in the jury's absence. When the jury returned to the courtroom, the court explained the effect of the settlement by noting that "[t]he posture of the case, as it exists now, is the plaintiffs' claim, based on a theory of negligence against the defendant Day & Zimmerman." (Emphasis added). The court then allowed counsel for both the McGonigals and Day & Zimmerman the opportunity to address new opening statements to the jury. Counsel for the McGonigals stated:
 
 
 20
 The determination that must be made now by you, and the evidence we are going to show is that Day & Zimmerman failed in their 100% x-ray inspection to catch that critically defective fuse, unreasonably dangerous product, when it went through the 100% x-rays at Day & Zimmerman. That is what we are going to show you in the remainder of our case.
 
 
 21
 After hearing evidence presented by the parties, the court allowed Day & Zimmerman to submit motions to the court. At that time, counsel for Day & Zimmerman stated that he wanted
 
 
 22
 to make sure that I understand with the settlement of the Gearhart claim, the product's case is gone in its entirety. Is this correct, or are they still proceeding--
 
 
 23
 THE COURT: You can anticipate this Court ruling that.
 
 
 24
 COUNSEL for Day & Zimmerman: All right. We're looking solely from the standpoint of negligence at this point in time?
 
 
 25
 THE COURT: That's correct.
 
 
 26
 Counsel for the McGonigals did not object to the court's statement. Based on the court's assurances, counsel for Day & Zimmerman moved for a directed verdict only on the negligence theory.
 
 
 27
 These record excerpts clearly indicate that after the settlement the parties agreed to proceed solely on the McGonigals' negligence theory against Day & Zimmerman. As a result of the McGonigals' decision to waive further proceedings on the strict liability products claim, we find that this issue is not properly before us on appeal. Thus, we affirm the district court's dismissal of the McGonigals' product liability claim against Day & Zimmerman.
 
 C.
 
 28
 The McGonigals' second contention on appeal is that the district court erred in granting Day & Zimmerman's motion for a directed verdict on the negligence cause of action. While acknowledging that the defective fuse was manufactured by Gearhart, the McGonigals argue that the accident would not have occurred had Day & Zimmerman detected the defective fuse during the inspection process. Furthermore, the McGonigals argue that the district court should have applied the doctrine of res ipsa loquitur to establish Day & Zimmerman's negligence. Not surprisingly, Day & Zimmerman argue that the district court properly granted the directed verdict because the McGonigals failed to establish either the standard of care owed by Day & Zimmerman to the McGonigals or a violation of that standard. Similarly, Day & Zimmerman object to the application of the doctrine of res ipsa loquitur in the instant case because the McGonigals failed to establish the prerequisites to the use of the doctrine.
 
 
 29
 In reviewing the district court's directed verdict, we apply the standard enunciated by this court in Boeing Co. v. Shipman, 411 F.2d 365, 374-76 (5th Cir.1969) (en banc). Our duty is to ascertain whether the district court improperly substituted its judgment for that of the jury. Although it is clear that facts evincing negligence are to be submitted to a jury, the standard of care owed by a defendant to a plaintiff is a question of law. Welch v. Heat Research Corp., 644 F.2d 487, 489 (5th Cir.1981). In order to recover under a negligence theory, the McGonigals must show that Day & Zimmerman owed a duty of care to the McGonigals and that Day & Zimmerman violated that duty. Abalos v. Oil Development Co., 544 S.W.2d 627, 631 (Tex.1976). In the instant case, the district court found that, as a matter of law, Day & Zimmerman owed the McGonigals the duty to take the degree of care that a reasonably prudent assembler would take under the same or similar circumstances, noting that this standard may vary with the degree of danger involved. We agree that this is a proper formulation of the duty of care in this case.
 
 
 30
 We then must consider whether the McGonigals introduced evidence at trial that would allow reasonable men to differ on whether Day & Zimmerman satisfied this standard. Both parties agree that the McGonigals were unable to introduce direct evidence of Day & Zimmerman's negligence because the x-rays of the defective grenade were destroyed in the normal course of business. The McGonigals thus urge this court to apply the doctrine of res ipsa loquitur to the instant case so that Day & Zimmerman's negligence can be inferred from the mere fact that the accident occurred.
 
 
 31
 As is commonly known, the Latin term "res ipsa loquitur" means "the thing speaks for itself." As this translation indicates, the doctrine of res ipsa loquitur is used only in those limited cases where the circumstances surrounding the accident constitute sufficient circumstantial evidence of the defendant's negligence to support such a finding. The plaintiff must show more than a mere possibility of negligence by the defendant; the plaintiff must show facts that demonstrate that it is more likely than not that the defendant's negligence was the proximate cause of the accident. Under Texas law, the doctrine of res ipsa loquitur can only be applied if the plaintiff can show that: (1) the character of and the circumstances attending the accident lead reasonably to the belief that, in the absence of negligence, the accident would not have occurred, and; (2) the thing or product which caused the injury is shown to have been under the management and control of the alleged wrongdoer. Marathon Oil Co. v. Sterner, 632 S.W.2d 571, 573 (Tex.1982). Unless both factors are present, the fact-finder cannot reasonably infer from the circumstances of the accident that the defendant was negligent. Id.
 
 
 32
 On appeal, Day & Zimmerman does not contest the McGonigals' assertion that the instrumentality causing the injury, that is the grenade thrown by Lane McGonigal, was under its management and control; thus, we will treat this prerequisite to the application of res ipsa loquitur as conceded. On the other hand, Day & Zimmerman vigorously argues that the McGonigals failed to show at trial that the accident was one that would not ordinarily occur in the absence of negligence. Day & Zimmerman contends that some fuse defects cannot be detected by x-ray, even when due care is exercised. The McGonigals disagree, contending that the missing delay fuse would have been detected by Day & Zimmerman inspectors had the proper standard of care been maintained throughout the inspection process.
 
 
 33
 After reviewing the record, we find that the McGonigals proffered evidence indicating that, contrary to Day & Zimmerman's assertions, the grenade's defect was visible by x-ray. Day & Zimmerman relies heavily on the testimony by Daniel Tarravella, the McGonigals' expert witness on mechanical fuses. Tarravella testified on direct examination that, in his opinion, the accident occurred because the grenade was missing at least one of its delay fuses which should have been detected by the x-ray inspectors had due care been exercised. On cross-examination, the following exchange occurred.
 
 
 34
 QUESTION: Is it not probable and is it not possible also based upon your experience that the four increments could have been there and would have been seen, but, yet, there was something about the packing that caused it to burn quicker?
 
 
 35
 TARRAVELLA: It's possible to have one or a certain degree of the mixed there, but because it was not compacted properly, you would have a different shading in the column. You would have a different density. It's possible, yes. You would have a different x-ray.
 
 
 36
 QUESTION: You would have a column that would be seven or eight-tenths inch in height as it required, but not of the density, and, therefore, it would burn quicker?
 
 
 37
 TARRAVELLA: Right.
 
 
 38
 QUESTION: So, it is your opinion that in that case, although none of us have seen the x-rays or know of them, that there was only one segment of that four-segment column there?
 
 
 39
 TARRAVELLA: That is a possibility, yes.
 
 
 40
 QUESTION: And, it is also possible, as you say, that the whole column was there when the people who looked at it who saw it.
 
 
 41
 TARRAVELLA: That is also possible.
 
 
 42
 Day & Zimmerman contends that this testimony can only be interpreted to mean that a critical defect could have been present in the fuse without appearing on the x-ray and thus a defect could have passed by Day & Zimmerman's inspectors in the absence of negligence. We do not agree that this testimony can be interpreted in only one way. Tarravella's testimony may also indicate that although the type of defect may not be readily apparent on the x-ray, such a defect would produce a shading on the x-ray that could have been detected through proper inspection. Thus, the evidence may fairly be seen as supporting the McGonigals' contention that the defect was subject to detection. The correct inference to be drawn from this testimony is a jury question.
 
 
 43
 Day & Zimmerman further rely on a subsequent portion of Tarravella's testimony. While still on cross-examination, Tarravella testified that in his thirty years of experience he had never heard of a missing delay column in a fully assembled grenade. Day & Zimmerman contends that this testimony "negates the inference that this accident could have happened only due to negligence in the x-ray inspection." Again, the inference to be drawn from this testimony is a jury question. If a man with thirty years experience in the munitions field had not previously heard of a grenade with a missing delay column, then it also seems reasonable to conclude that such an error will occur only when the inspector is negligent.
 
 
 44
 The McGonigals are not required to eliminate with certainty all possible non-negligent causes of the grenade's premature explosion; they need only present evidence from which reasonable persons can say that on the whole it is more likely than not that Day & Zimmerman's negligence was the cause of the accident. Since the parties do not dispute Day & Zimmerman's management and control over the grenade and the McGonigals' expert witness's testimony can reasonably be interpreted to show that in the absence of negligence a defective grenade could be detected by x-ray inspection, the McGonigals established both of the prerequisites for the application of the doctrine of res ipsa loquitur. Moreover, Day & Zimmerman failed to rebut the McGonigals' res ipsa loquitur claims by conclusively establishing that this accident occurred in the absence of negligence. Under these circumstances, the district court erred in granting Day & Zimmerman a directed verdict instead of submitting the case to the jury for a determination of whether Day & Zimmerman was negligent in inspecting the grenades. Thus, we vacate the directed verdict and remand the case for a new trial on whether Day & Zimmerman's negligence was the cause of the explosion.
 
 III.
 
 45
 After reviewing the record, we find that the district court properly dismissed the McGonigals' strict liability claim because the McGonigals waived this cause of action after its settlement with Gearhart. We find, however, that this case must be remanded for a new trial on the question whether Day & Zimmerman was negligent in failing to detect the defective grenade. Thus, the judgment of the district court is
 
 
 46
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 
 
 
 *
 District Judge of the Western District of Louisiana, sitting by designation
 
 
 [1]
 The critically defective M213 delay fuse was manufactured by Gearhart in 1973, and assembled into grenade lot LS 56-504 by Day & Zimmerman. All Gearhart fuses assembled into M67 hand grenades in 1973 were x-rayed by Day & Zimmerman employees before assembly, and each x-ray photograph was read by two trained readers. Day & Zimmerman employees were required to reject any critically defective fuses detected. Under its contract with the United States, Day & Zimmerman was to inspect and x-ray every fuse that it used in assembling the M67 grenades, and to remove defective fuses from the lot. Day & Zimmerman's contract with the government also confirmed that Day & Zimmerman was an independent contractor and not an agent of the United States
 
 
 [2]
 In 1977, Gearhart and Pengo entered into an "Agreement and Plan of Reorganization" whereby Gearhart agreed to transfer certain properties to Pengo and Pengo agreed to assume certain liabilities of Gearhart. Since the McGonigals' injuries resulted from the business operations of properties transferred to Pengo, Gearhart contended that Pengo was obligated to indemnify Gearhart
 
 
 [3]
 The district court indicated that after the settlement, the McGonigals were left only with their negligence claim against Day & Zimmerman. Nonetheless, the district court stated that under Texas law, Day & Zimmerman could not be liable in strict liability because it was entitled to reimbursement or indemnity from Gearhart