# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2011

Lyle W. Cayce
Clerk

No. 10-40442
Summary Calendar

WAYNE PEARSON ET AL,

Plaintiffs

v.

BP PRODUCTS NORTH AMERICA, INC.,

Defendant–Appellant/
Cross-Appellee

v.

GILBERT CANTU; GREGORIO FUENTES; WILLIE MAYS, JR.,

Intervenor Plaintiffs–Appellees/
Cross-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 3:07-CV-221

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-40442

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2005, as a precaution due to Hurricane Rita, BP Products North America ("BP" or the "Appellant") decided to shut down all of its Texas City Refinery (the "Refinery").  Following Hurricane Rita, BP decided to audit, evaluate, and "turn around" each of the units at the Refinery on an individual basis before resuming production.  To complete the turnaround, BP used independent contractors for most of the work.  On any given day during the turnaround, between fifteen and sixteen thousand contractors were at the Refinery doing turn-around work.  One such contractor was Fluor Corporation ("Fluor").  Fluor accepted the responsibility to control the maintenance work at Pipestill 3B, one of the refinery's units.  In  2007, when the events that gave rise to this lawsuit occurred, only about one-third of the Refinery's units were up-and-running.

On the night of April 19, 2007, Gilbert Cantu, Gregorio Fuentes, and Willie Mays Jr. (collectively, the "Appellees") were among the 450 contractors working for Fluor on the turnaround of Pipestill 3B.  Around 9:00 p.m., workers began smelling an odor unlike those one usually smells in a refinery.  The workers who smelled it described it as smelling like acetone, but the Refinery does not produce any acetone.  None of the hundreds of monitors and detectors designed to detect the release of any harmful gases was triggered.  Fluor's foremen stopped work on Pipestill 3B and allowed any worker to be examined at a local hospital; about one hundred workers went.  Upon medical examination, no workers were found to have any exposure injuries that required hospital admission or required them to miss work.

One hundred plaintiffs filed suit in the Souther District of Texas, claiming that the injuries from the April 19 incident and other previous incidents at the Refinery were caused by BP's negligence.  The district court conducted a joint trial of ten plaintiffs' (the "Trial Plaintiffs") claims that arose out of the April 19

2

No. 10-40442

incident in particular. The Appellees were part of that ten-plaintiff group. At trial, the Trial Plaintiffs' theory was that the gas was carbon disulfide and it came from BP's Sulfur Recovery Unit. None of the Trial Plaintiffs' experts could identify the odor's source or its cause. The most definitive proof that the Trial Plaintiffs marshaled that the gas was carbon disulfide was a mask worn by one of the Trial Plaintiffs, which was found to have had exposure to carbon disulfide. But, the laboratory technician who tested the mask admitted that the mask had not been appropriately maintained for proper scientific study.

BP moved for judgment as a matter of law, which the district court denied, and the claims were submitted to the jury. As part of the jury's charge, the district court instructed the jury that it could infer the Appellant's negligence through the doctrine of *res ipsa loquitur*. The jury returned a verdict for the Trial Plaintiffs and awarded approximately $325,000 in compensatory damages amongst the ten Trial Plaintiffs and also $100 million in punitive damages ($10 million per Trial Plaintiff). The district court entered final judgment for the Trial Plaintiffs but vacated the jury's award of punitive damages because the Trial Plaintiffs failed to prove gross negligence, as required under Texas law. BP timely appealed. Only three of the Trial Plaintiffs' claims are the subject of this appeal as the other seven Trial Plaintiffs have settled with BP.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a district court's denial of a motion for judgment as a matter of law de novo, applying the same standards as the district court. *McBeth v. Carpenter*, 565 F.3d 171, 176 (5th Cir. 2009). In reviewing such a denial, "we view all evidence and draw all reasonable inferences in the light most favorable to the verdict." *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007) (internal quotation marks omitted). "In an action tried by jury, a motion for judgment as a matter of law is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *McBeth*, 565 F.3d at 176. Where "a

No. 10-40442

reasonable jury would not have a legally sufficient evidentiary basis to find for a party," Fed. R. Civ. P. 50(a)(1), the court should grant the motion for judgment as a matter of law. *Allstate*, 501 F.3d at 405 (5th Cir. 2007).

Where, as here, federal jurisdiction is based on diversity, we apply the substantive law of the forum state—Texas. *Aubris Res. LP v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 483, 486 (5th Cir. 2009) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938)) (additional citation omitted). In resolving issues of Texas law, we look to the final decisions of the Texas Supreme Court, which are binding, but if there is no decision directly on point, then we must determine how that court, if presented with the issue, would resolve it. *Packard v. OCA, Inc.*, 624 F.3d 726, 729 (5th Cir. 2010). "The decisions of Texas intermediate appellate courts may provide guidance, but are not controlling." *Id.*

## III. DISCUSSION

BP argues that it was improper for the district court to have instructed the jury on *res ipsa loquitur* and that absent that instruction, Appellees could not show that it was negligent. The Texas Supreme Court in *Haddock v. Arnspiger*, 793 S.W.2d 948 (Tex. 1990), summarized the applicability of *res ipsa* under Texas law:

> *Res ipsa loquitur*, meaning "the thing speaks for itself," is used in certain limited types of cases when the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence to support such a finding. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 250 (Tex. 1974); *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982). *Res ipsa loquitur* is applicable only when two factors are present: (1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant. *Mobil Chem.*, 517 S.W.2d at 251; *Marathon Oil*, 632 S.W.2d at 573. *Res ipsa loquitur* is simply a rule of evidence by which negligence may be

No. 10-40442

inferred by the jury; it is not a separate cause of action from negligence. *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982).

*Id.* at 950.

Appellants argue that *Marathon Oil* forecloses the use of *res ipsa* to prove negligence in chemical release cases. While we do not think that the Texas Supreme Court has laid down a per se rule against the use of *res ipsa* in these types of case, we do find the analogous facts in *Marathon Oil* persuasive in determining the appropriateness of the *res ipsa* instruction given in this case. In *Marathon Oil*, an employee of a contractor was working at a refinery doing a turnaround job. *Marathon Oil*, 632 S.W.2d at 572. The employee entered into a vessel and "noticed a sour, rotten, musk oil smell." *Id.* (internal quotation marks omitted). After a short time, the employee became ill from the smell. *Id.* Upon hearing about this, the contractor stopped work in the vessel to investigate the smell, but there was no trace of harmful gas found, and work resumed. *Id.* at 573. At the trial, the employee's expert could not identify the "exact gas" involved. *Id.* The Texas Supreme Court found a *res ipsa* instruction inappropriate under the circumstances because "[e]scaping gas in the vicinity of a complex chemical plant could be due to an unexpected and unforeseeable mechanical failure or it could be due to negligence." *Id.* Moreover, the court found that the employee could not prove that "the instrumentality causing the injury was in the control of Marathon," the owner of the refinery, and not the contractor turning around that specific vessel. *Id* at 574.

The factual similarities between *Marathon Oil* and this case are too similar for us to overlook. Here, there was a report of a noxious gas that the Appellees claimed caused their injuries. No monitors or detectors registered any harmful gas release. The Appellees claim that the gas released was carbon disulfide based on a lab test of a mask worn on the day of the incident, but which

5

was admitted not to be in suitable condition for normal testing procedures. None of the Appellants' experts could identify where the odor came from or whether if it was even from BP's property. The Appellees have shown neither that the character of the accident is one that would not usually occur absent negligence nor that the injury-causing instrumentality was in BP's control. *See Haddock*, 793 S.W.2d at 950. In such circumstances, the district court should not have instructed the jury on *res ipsa loquitur*. Without a *res ipsa* instruction, the Appellees cannot meet their burden of proof as to negligence. *See Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

## IV. CONCLUSION

For the foregoing reasons, we VACATE the jury's verdict and REVERSE the district court's denial of Appellants' motion for judgment as a matter of law.

VACATED; REVERSED.