Padmavathy POTHARAJU, Individually, as Personal Representative of the Estate of Rao Potharaju, Deceased, and as Next Friend of Karthik Potharaju and Anila Potharaju, Minor Children, Plaintiffs,

v.

JAISING MARITIME, LTD. and Burns International Security Services, Inc., Defendants.

No. 1:00–CV–292.

United States District Court, E.D. Texas, Beaumont Division.

Jan. 28, 2002.

Myra Gregory, Parker and Parks, Port Arthur, TX, for Padmavatby Potharaju.

James Philip Spencer, Jr., Groves, TX, for Karthik Potharaju and Anila Potharaju.

Michael Thomas Bridwell, Strong, Pipkin Nelson & Bissell, Beaumont, TX, for Great Lakes Carbon Corp.

Thomas W. Duesler, Harris Lively & Duesler, Beaumont, TX, for Burns International Security Services.

Alan B. Folger, John Bradley Mitchell, Roberts Markel & Folger, Houston, TX, for M.T. Maritime Management.

*MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT BURNS INTERNATIONAL SECURITY SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT*

SCHELL, District Judge.

This matter is before the court on "Defendant Burns International Security Services Inc.'s Motion for Summary Judgment," filed on August 7, 2001 (Dkt.# 33). Plaintiffs filed a Response on September 28, 2001 (Dkt.# 39), and Defendants filed a Reply on October 9, 2001 (Dkt.# 40). Upon consideration of the parties' written submissions, exhibits, affidavits, and the applicable law, the court is of the opinion that "Defendant Burns International Security Services Inc.'s Motion for Summary Judgment" should be GRANTED.

## I. BACKGROUND

Plaintiff Padmavathy Potharaju brings this action individually, on behalf of the estate of her deceased husband, Rao Potharaju, and on behalf of her minor children Karthik and Anila Potharaju (collectively "Plaintiffs"), alleging that Defendant Burns International Security Services Incorporated ("Burns") negligently caused the death of Rao Potharaju ("Potharaju"). Specifically, Plaintiffs assert claims pursuant to this court's diversity jurisdiction under the Texas Wrongful Death Act,[1] the Texas Survival Statute,[2] common law negligence, and gross negligence under Texas state law. Plaintiffs allege, among other things, that Burns failed to provide a safe place to work, failed to provide a safe ingress and egress from the ship, failed to maintain a proper lookout, and failed to provide adequate security, which proximately caused the death of the decedent.[3] Burns entered into a written agreement with Great Lakes Carbon on May, 5, 1995, to provide security services to the Great Lakes Carbon facility in Port Arthur, Texas. Potharaju was found dead at this facility.

Most of the following facts are derived from police and witness reports provided by Plaintiffs to the court. Pls.' Response Ex. 1. These reports assist the court in reconstructing the events leading up to the unfortunate death of Rao Potharaju. Potharaju was the Chief Officer on the M.V. Jaising Trinity, a cargo vessel from India that was docked at the Great Lakes Carbon facility in Port Arthur on August 13, 1998. The freighter was docked for the purpose of loading coke petroleum by-product. On August 13, 1998, at approximately 10:00a.m., Potharaju and the ship's Junior Officer, Chitti Bomma Rajesh Babu ("Babu"), left the ship to call for a taxi. The ship's Chief Engineer, Satish Kumar Singh ("Singh"), and Radio Officer, Sensubir Kumar ("Kumar"), followed Potharaju and Babu off the vessel.

Next, Potharaju, Babu, Sigh, and Kumar apparently walked to a telephone booth where Potharaju made two calls to India. Upon leaving the telephone both, Babu and Potharaju walked to the security gate where Babu asked Alice Miller ("Miller"), an employee of Burns, to call a taxi for Babu and Potharaju. Babu then had Miller cancel the taxi because Potharaju allegedly was acting obnoxiously, and Babu did not wish to share a taxi with him. In Miller's witness statement to the Port Arthur police, she states that Babu and Potharaju proceeded to leave the area surrounding the security gate for fifteen to twenty minutes, and that Babu later returned by himself and requested her to call him a taxi again. According to Babu, during that fifteen to twenty minute interval, Potharaju walked back toward the vessel, and Babu followed him until Potharaju was far enough away so that Babu could go back to get a taxi unnoticed. Babu left the Great Lakes Carbon premises in the taxi when it arrived. At some unknown time before the taxi arrived, Potharaju allegedly slapped Babu. Babu did not mention this incident when first interviewed by

1. Tex. Civ. Prac. & Rem.Code ch. 71A, § 71.002–4 (West 2000).

2. Tex. Civ Prac. & Rem.Code § 71.021 (West 2000).

3. In their fourth amended complaint, Plaintiffs allege generally that all defendants, including Burns, were negligent in failing to provide a safe place to work, for the unsea-worthiness of the vessel, in failing to provide a safe ingress and egress from the ship, in failing to maintain a proper lookout, and in failing to provide adequate security. Pls.' Fourth Am. Compl. at 3. All of the aforementioned allegations, except the allegation relating to the unseaworthiness of the vessel, conceivably relate to the negligence claim against Burns.

the police; however, he subsequently changed his statement and admitted that he had been slapped by Potharaju prior to leaving in the taxi. Babu claims that Potharaju slapped him for the purpose of training him to be a better officer. He also claims that he did not strike Potharaju back. No one else witnessed the incident.

At about 10:20 a.m., the ship's Third Officer, Mubin Mahmud Kazi ("Kazi"), discovered Potharaju floating on his back in the water near the right side of the M.V. Jaising Trinity. The only signs of trauma to Potharaju's body were a scrape on the end of his nose and an abrasion on his right thumb. In his statement, Babu claims to have noticed a small abrasion on the bridge of Potharaju's nose prior to the time that Babu left in the taxi.

After some of the vessel's crew removed Potharaju's body from the water, he was taken to a hospital for resuscitation and a blood test. The blood test resulted in a finding that Potharaju had a blood alcohol content of .389% at the time of his death. The ensuing police investigation into the incident determined that Potharaju's death was accidental, and a follow up police report made on August 26, 1998, postulated that Potharaju's high level of intoxication probably caused his fall into the water. An autopsy performed on Potharaju on the date of his death likewise concluded that his death was accidental, caused by asphyxia due to drowning.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. *See International Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *See id.* An issue is material only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this analysis, the court reviews the facts and evidence and draws all inferences in the light most favorable to the nonmovant. *See Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). However, the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *See Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

## III. ANALYSIS

A. *Plaintiffs' Claims Asserted Under The Texas Wrongful Death Act And Survival Statute*

 Plaintiffs assert separate claims under the Texas Wrongful Death Act and the Texas Survival Statute for damages resulting from the death of Potharaju. Wrongful death and survival claims are statutory in nature. *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992). The Texas Wrongful Death Act confers a cause of action upon the surviving spouse, children, and parents of a decedent for

damages the decedent may have recovered if he had lived. *See* TEX. CIV. PRAC. & REM. CODE § 71.004(b) (West 2000). The Act provides that liability is based on "an injury that causes an individual's death." TEX. CIV. PRAC. & REM.CODE § 71.002 (West 2000). On the other hand, the Texas Survival Statute allows the decedent's heirs, legal representatives, and estate to bring suit for personal injuries the decedent suffered before his death. TEX. CIV. PRAC. & REM.CODE § 71.021 (West 2000). Claims arising under both the Wrongful Death Act and the Survival Statute are derivative actions, and condition Plaintiffs' ability to recover upon the decedent's theoretical ability to have brought an action had the decedent lived. *Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, 330 (5th Cir.1994) (citing *Russell,* 841 S.W.2d 343, 348–49). The court therefore will first address the issue of whether Potharaju could have recovered in an action for negligence against Burns immediately prior to his death.

B. *Plaintiffs' Negligence And Gross Negligence Claims*

1. *Plaintiffs' Negligence Claim*

In "Plaintiffs' Fourth Amended Complaint," Plaintiffs characterize their claims as simple negligence and gross negligence claims. Plaintiffs' theory essentially states that Burns negligently caused Potharaju's death because it failed to provide adequate security services. In particular, they allege that Burns's security guard should have known that Potharaju was intoxicated, and prevented him from falling into the water. Burns's motion for summary judgment argues that Plaintiffs cannot maintain their negligence and gross negligence claims against Burns because Burns did not owe a duty to Potharaju. Thus, the court must determine whether Burns owed a duty to Potharaju.

In order to prevail on a cause of action for negligence, a plaintiff must satisfy three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately caused by the breach. *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476 (Tex.1995). The threshold issue in a negligence case is whether the defendant owed a duty to the plaintiff. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Whether the defendant owed a duty to the plaintiff is a question of law for the court to decide under the facts surrounding the occurrence in question. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998). Here, Burns has pointed out that it had no duty to provide security services to Potharaju, and Plaintiffs have failed to put forth any evidence demonstrating that Burns had such a duty.

In their motion for summary judgment, Burns assumes that Plaintiffs are asserting their claims under a premises liability theory; therefore, Burns contends that it owed Potharaju no duty because it was not in control of the premises at the time of Potharaju's death. In support of their position, Burns offers the affidavit of its general manager, Robert J. Cascino, to elucidate the meaning of the agreement executed between Burns and Great Lakes Carbon. However, Plaintiffs' fourth amended complaint neither explicitly asserts a premises liability theory of recovery nor does it allude to such a theory. Nonetheless, Plaintiffs have followed Burns's lead and argue their negligence claim under a theory of premises liability. They argue that the court should not be concerned with any overall control that Burns may or may not have had over the premises, but should focus on Burns's " 'specific control over the safety and secu-

rity of the premises.'" Pls.' Response at 3 (quoting *Exxon v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993)). Plaintiffs cite no helpful legal authority to support their contention that Burns had control of the premises.[4] The court believes that the parties' focus on whether or not Burns controlled the premises is misplaced, and will endeavor to determine whether Burns had any duty to Potharaju on other grounds.

The court will first examine whether the owner of the premises, Great Lakes Carbon, owed any duty to Potharaju. Under Texas law, the duty owed by a premises owner or occupier is determined by the status of the person injured. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975). Here, the parties both assert that Potharaju was an invitee.[5] An owner or occupier of land must use reasonable care to make the premises safe for the use of invitees. *Lefmark Mgmt. Co. v. Old*, 946 S.W.2d 52, 53 (Tex.1997) (citing *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425, 431 (Tex.1950)). Accordingly, Great Lakes Carbon owes a duty of reasonable care to make the premises safe for the use of invitees, including Potharaju.

Since Great Lakes Carbon owes a duty to invitees, the next issue for the court is whether that duty extends to Burns as a security contractor and, if so, whether Burns owes a duty solely to Great Lakes Carbon or whether it also owes a duty to invitees on the premises. Under the circumstances of this case, the "duty" owed by Burns to Potharaju depends solely on the terms of the agreement between Great Lakes Carbon and Burns. *See Frederick v. TPG Hospitality, Inc.*, 56 F.Supp.2d 76, 78 (D.D.C.1999) (granting defendant security contractor's motion for summary judgment because the security contractor had no duty to invitees on the hotel premises under its contract with the hotel owner). The agreement, entitled "Security Services Agreement," and dated May 5, 1995, states that Burns will furnish Great Lakes Carbon with security personnel and render services at locations and during hours set forth in the agreement Pls.' Response Ex. 3. That the exact location and hours are not enumerated in the agreement is of no importance to the court's analysis. In his affidavit, Robert J. Cascino states that the agreement requires Burns to provide security guards at the Great Lakes Carbon facility on a set schedule. Defs.' Mot. for Summ. J. Ex. 2 at ¶ 3. Moreover, nothing in writing has been provided to the court setting forth Burns's or the security guards' specific responsibilities and duties. In fact, the agreement does not outline any services that Burns is required to provide Great Lakes Carbon other than security services, as evidenced by the title of the agreement, "Security Services Agreement." By its

---

**4.** The one case cited by Plaintiffs, *Exxon v. Tidwell*, is not analogous to the instant case. The *Exxon* case concerned a service station employee who brought a negligence action against the oil company that owned the station at which he worked. The case, which dealt with a landowner's duty to prevent criminal acts of third parties who are not under the landowner's control, was decided under landlord-tenant principles. More specifically, the Texas Supreme Court framed the issue as "whether an oil company owes a duty of ordinary care to protect a tenant services station's employees from the criminal acts of third parties," and decided that the answer

"depends on whether the oil company possessed a right of control over the safety and security of the station." *Id.* at 20. In the instant case, Burns was neither a landowner nor a lessor, and Plaintiffs have not produced any evidence in response to the motion for summary judgment showing that Potharaju's death was caused by the criminal act of a third party. Thus, the reasoning in *Exxon* is not applicable here.

**5.** An "invitee" is "one who enters on another's land with the owner's knowledge and for the mutual benefit of both." *Rosas*, 518 S.W.2d at 536.

terms, the agreement is the "entire agreement and understanding between the parties." Pls.' Response Ex. 3. Accordingly, under the agreement, Burns has a duty to furnish security personnel and services to Great Lakes Carbon.

■ As mentioned above, Great Lakes Carbon has a common law duty to use reasonable care to keep the premises safe for invitees, but the court finds that the agreement between Burns and Great Lakes Carbon does not create that same duty for Burns. The agreement says nothing about a duty owed by Burns to invitees on the premises of the Great Lakes Carbon facility. Rather, the agreement expressly states that Burns does not owe a duty to invitees: "[t]he services provided under this Agreement are solely for the benefit of Client and neither this Agreement nor any services rendered hereunder confer any rights on any other party as a third-party beneficiary, or otherwise." Pls.' Response Ex. 3. Therefore, Burns owed no duty to Potharaju because the agreement does not contemplate such a duty.[6]

■ Nor did Burns do anything to assume a duty to Potharaju. *See Frederick*, 56 F.Supp.2d at 79–80. A party may owe a duty of due care if it undertakes to make the premises safe for others. *Wilson v.*

*Texas Parks And Wildlife Dept.*, 8 S.W.3d 634, 635 (Tex.1999); *see also* RESTATEMENT (SECOND) TORTS § 324A (1965).[7] It is clear from the agreement between Burns and Great Lakes Carbon that Burns did not assume a duty to invitees on the premises when it entered into the agreement. As previously noted, the agreement only requires Burns to supply security guards and services on the premises of the Great Lakes Carbon facility. Therefore, any steps Burns may have taken to make the premises safe were undertaken solely for the benefit of Great Lakes Carbon.

■ Further, Plaintiffs, who have the burden of proof at trial and must come forward in response to a motion for summary judgment with some evidence on each element of their claims, submit no evidence indicating that Burns assumed a duty to Potharaju by undertaking to make the premises safe for invitees like Potharaju. Plaintiffs instead presuppose that Burns had a duty to make the premises safe for Potharaju, and that Burns was negligent in performing this duty because its employee allowed Potharaju to wander "down to the water's edge" while he was "drunk." Pls.' Response at 5. In short, Plaintiffs allege that Burns's employee failed to act to protect Potharaju from his own intoxication. However, Plaintiffs do

---

**6.** *See Washington v. U.S. Dept. of Housing and Urban Development*, 953 F.Supp. 762, 773–74 (N.D.Tex.1996) (holding that, under Texas law, a security services company which provided services at apartment complex pursuant to a contract, which expressly provided that the purpose of the services was to protect the owner's property, did not owe a duty to protect tenants because the contract gave the security company no possessory interest or control in complex that would create a duty); *see also Simmons v. Baltimore Orioles, Inc.*, 712 F.Supp. 79, 83 (W.D.Va.1989) (finding that a security agency under contract with the city to patrol the city park until 10:00 p.m. had no duty to patrol after that time).

**7.** Section 324A of the Restatement (Second) of Torts provides, in pertinent part:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

not cite any affirmative act performed by Burns that constitutes an undertaking to render services to Potharaju or any other invitee. Thus, Burns had no duty to make the premises safe for Potharaju, and Burns did not assume such a duty under the terms of the agreement or the facts of this case. As a result, the court holds that Burns neither owed nor assumed a duty to Potharaju as a matter of law.

### 2. Criminal Liability Of Third–Parties

To the court's knowledge, Plaintiffs have never theorized that Potharaju's death may have been caused by a criminal act of a third party. In their motion for summary judgment, Burns articulates that Plaintiffs may attempt to assert such an argument, but neither Plaintiffs' complaint nor their response ponders this theory. The court need not address phantom assertions that do not affect its ultimate decision on this motion.

### 3. Plaintiffs' Gross Negligence Claim

 Gross negligence is defined under Texas law as such an entire want of care as to establish that the act or omission complained of was the result of actual conscious indifference to the rights, safety, or welfare of the person affected. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994) (emphasis omitted). Gross negligence involves two components: (1) the defendant's act or omission; and (2) the defendant's mental state. *Id.; see also* TEX. CIV. PRAC. & REM.CODE § 41.003 (West 2000) (setting forth the standards for recovery of exemplary damages). It should be noted that a finding of gross negligence is relevant only to an assessment of exemplary damages, and recovery of actual damages is a prerequisite to receipt of exemplary damages under Texas law. *Riley v. Champion Int'l Corp.,* 973 F.Supp. 634, 641 (E.D.Tex.1997) (citations omitted); *see also Doubleday & Co., Inc. v. Rogers,* 674 S.W.2d 751, 754 (Tex.1984).

Moreover, "[r]ecovery of exemplary damages requires a finding of an independent tort with accompanying actual damages." *Riley,* 973 F.Supp. 634, 642 (citations omitted). Thus, Plaintiffs' claim for gross negligence will not survive beyond the summary judgment stage due to the court's finding that Burns neither owed nor assumed a duty to Potharaju under Plaintiffs' negligence claim.

### IV. CONCLUSION

After reviewing the record, the court concludes that, when viewed in the light most favorable to Plaintiffs, the summary judgment evidence supports the finding that there are no genuine issues of material fact regarding whether Burns owed a duty to Potharaju. As a result, Plaintiffs cannot maintain their negligence claim against Burns. Potharaju likewise could not have maintained a claim for negligence against Burns immediately prior to his death. Because Potharaju could not have maintained a claim in his own right prior to his death, Plaintiffs cannot maintain an action under the Texas Survival Statute. For that same reason, Plaintiffs' claim under the Texas Wrongful Death Act does not exist. Moreover, Plaintiffs cannot maintain a cause of action for gross negligence since Plaintiffs cannot maintain their action against Burns under any asserted independent tort theory. Therefore, Burns's motion for summary judgment is hereby GRANTED. It is so ORDERED.