Pascio MUTUBA, Plaintiff,

v.

HALLIBURTON CO. et al., Defendants.

Civil Action No. H–11–2318.

United States District Court, S.D. Texas, Houston Division.

May 10, 2013.

David Kasanow, Megan Kinsey–Smith, McKenna Long et al., Washington, DC, Margaret Twomey Brenner, Schirrmeister Diaz–Arrastia Bremm LLP, Houston, TX, for Plaintiff.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment (Document

No. 97) and Defendants' Motion to Dismiss (Document No. 101). Having considered the motions, submissions, and applicable law, the Court finds that the motions should be granted.

## I. BACKGROUND

This personal injury action arises from an auto-pedestrian accident that occurred at a military base in Iraq during the summer of 2009. In February 2009, Plaintiff Pascio Mutuba ("Plaintiff"), a citizen of Uganda, began working as a security guard at Forward Operating Base Prosperity ("Camp Prosperity"), a United States military installation in the International Zone of Baghdad, Iraq. As part of his duties, Plaintiff was responsible for performing inspections of vehicles seeking entry into Camp Prosperity. On June 28, 2009, Plaintiff approached a truck at the entry control point to Camp Prosperity to conduct an inspection. During his investigation, the truck moved forward and ran over Plaintiff, causing him serious and permanent injuries, including the loss of his left arm at the shoulder.

On June 17, 2011, Plaintiff commenced this action against Defendants Halliburton Company; KBR, Inc.; KBR Holdings, LLC; KBR Group Holdings, LLC; Kellogg Brown & Root LLC; Kellogg Brown & Root International, Inc.; Kellogg Brown & Root Services, Inc.; KBR USA LLC; Service Employees International, Inc.; and Overseas Administrative Services, Ltd. (collectively, "Defendants"). According to Plaintiff, the truck involved in the accident was owned by Defendants and driven by one of Defendants' employees.

Plaintiff's Complaint alleges claims for negligence; gross negligence; negligent hiring, training, and supervision; res ipsa loquitur; and respondeat superior.

On November 28, 2012, Plaintiff's counsel filed a motion to withdraw as counsel for Plaintiff, "based on good cause and upon a fundamental disagreement and ethical reasons surrounding the attorney-client relationship."[1] The Court granted the motion, and Plaintiff proceeded *pro se.* Following several requests by Defendants for various discovery, and Plaintiff's failure to respond, Defendants moved the Court for a motion to compel deposition, which the Court granted on January 16, 2013. The Court ordered Plaintiff, within ten days from the entry of the Order, to "provide Defendants' counsel at least three alternative dates before February 28, 2013, on which Plaintiff, Pascio Mutuba, will be available in Houston, Texas, to give his deposition."[2] To date, Plaintiff has failed to comply with the Court's Order.

Currently pending before the Court are two dispositive motions—on January 28, 2013, Defendants filed a motion for summary judgment, and on February 5, 2013, Defendants filed a motion to dismiss. Defendants seek a full dismissal with prejudice of all claims pending against them.

Plaintiff did not respond on the record to the motion for summary judgment. Instead, Plaintiff sent correspondence by mail directly to the Court and the U.S. Department of Labor. The Court entered both letters onto the electronic docket.[3] The Court subsequently issued an Order noting that "Plaintiff has failed to comply

---

**1.** *Motion to Withdraw by Kenneth T. Fibich, Joseph C. Melugin, and Fibich, Hampton, Leebron, Briggs & Josephson, LLP as Counsel for Plaintiff Pascio Mutuba,* Document No. 93 at 2.

**2.** *Order Granting Defendants' Motion to Compel,* Document No. 95 at 1.

**3.** *Letter from Pascio Mutuba to the Court,* Document No. 102 [hereinafter *Letter from Mutuba*]; *Letter from Pascio Mutuba to the U.S. Department of Labor,* Document No. 105.

with the Orders of this Court and has failed to respond to discovery" and ordering Plaintiff to "file a response to Defendants' Motion to Dismiss on or before March 13, 2013."[4] On March 12, 2013, Defendants filed, on the record, a response to recent off-the-record communications by Plaintiff, to which Plaintiff responded on April 1, 2013.[5] On April 10, 2013, the Court received from Plaintiff a response to Defendants' motion to dismiss. Although Plaintiff's filings with the Court have been largely incomprehensible in the time that he has proceeded *pro se,* the Court nonetheless will construe the attached purported evidentiary documentation to Plaintiff's *pro se* response to Defendants' motion to dismiss as purported summary judgment evidence.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine issue for trial. *See* FED.R.CIV.P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A dispute about a material fact is

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir.1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio,* 40 F.3d 698, 713 (5th Cir.1994). If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. The nonmovant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, or "only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir.2007) (quoting *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)). Furthermore, it is not the function of the court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman,* 954 F.2d 1125, 1137 n. 30 (5th Cir.1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific

4. *Order on Defendants' Motion to Dismiss,* Document No. 103 at 1.

5. *Defendants' Response to Recent Communications from Plaintiff,* Document No. 108; *Filing Plaintiff[']s Responses to Recent Communications from Defendant,* Document No. 109.

facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir.2000) (quoting *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir.1999)).

■ "Courts construe pleadings filed by pro se litigants under a less stringent standard than those filed by attorneys." *White v. Briones*, No. H–09–2734, 2011 WL 66134, at *3 (S.D.Tex. Jan. 7, 2011) (Rosenthal, J.) (citing *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). Accordingly, the pleadings of *pro se* litigants are liberally construed. *Id.* However, "pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Id.* (quoting *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir.1999) (per curiam) (unpublished table decision)).

## III. LAW & ANALYSIS

### A. Negligence

■ Defendants argue that Plaintiff's negligence claims must fail because the summary judgment evidence affirmatively shows that Defendants did not owe a legal duty to Plaintiff. The elements of negligence under Texas law [6] are: (1) the defendant owed a duty to plaintiff; (2) the defendant breached that duty; and (3) the defendant's breach proximately caused the plaintiff's injuries. *Espinoza v. Cargill Meat Solutions Corp.*, 622 F.3d 432, 443 (5th Cir.2010) (citing *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex.2004)). Whether

a legal duty exists is a threshold question of law for the court to decide. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 541 (5th Cir.2005) (citing *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999)).

■ Although normally the determinative inquiry as to whether a legal duty exists is foreseeability,[7] *Id.*, certain relationships do impose duties upon parties as a matter of law. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 309–10 (Tex. 1983). "Under Texas law, in the absence of a relationship between the parties giving rise to the right of control, one person is under no legal duty to control the conduct of another, even if there exists the practical ability to do so." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex.2006). In the context of independent contractors, "an employer can be held liable for the actions of his independent contractor if the employer retains some control over the manner in which the contractor performs the work that causes the injury." *Townsend v. Goodyear Tire & Rubber Co.*, 481 F.Supp.2d 610, 616 (N.D.Tex.2007) (citing *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 791 (Tex.2006)). For an employer to be held liable for negligence, "its supervisory control must relate to the condition or activity that caused the injury ... [such that] the scope of such duty toward independent contractors is limited to the scope of its retained supervisory control." *Id.* at 616–17 (emphasis omitted). Moreover, "a defendant has no legal duty to protect the plaintiff from the acts of a

---

**6.** Because this is a diversity action, Texas substantive law applies. *See Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 328 (5th Cir.2001).

**7.** In determining whether a defendant possessed a duty, the court considers several interrelated factors, "including the risk, foreseeability, and likelihood of injury weighed

against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Hous. Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). "Of all these factors, foreseeability of the risk is the foremost and dominant consideration." *Id.* (citation omitted) (internal quotation marks omitted).

third person." *Ondris v. Rossington,* No. 3:98–CV–1677X, 1999 WL 558572, at *2 (N.D.Tex. July 30, 1999).

■ Defendants present summary judgment evidence that: (1) the driver of the vehicle that hit Plaintiff was Chandra Pathiranage ("Pathiranage"); (2) Pathiranage was employed by Prime Projects International ("PPI"), not by Defendants; and (3) PPI owned the truck that hit Plaintiff. The weight of this evidence, Defendants argue, conclusively demonstrates that Defendants owed no legal duty to Plaintiff, and therefore no genuine issue of material facts exists for a fact-finder to determine on Plaintiff's negligence claim. Although Plaintiff has not responded directly to Defendants' motion for summary judgment, Plaintiff has provided several documents attached to his response to Defendants' motion to dismiss, including an email from his former attorney, two one-page incident reports from the night of the accident, and five unsworn declarations from other Ugandan security guards who were present at Camp Prosperity at the time of the accident.

### 1. Driver of the Vehicle

According to Defendants, the identify of the driver of the truck that ran into Plaintiff is not in dispute. As support, in their motion for summary judgment Defendants cite to Plaintiff's own responses to elicited discovery. Request for Admission No. 29, submitted to Plaintiff by Defendants during discovery, reads: "The driver of the truck which drove over you is Chandra

Pathiranage."[8] In response, Plaintiff purportedly answered "YES."[9] There is some question, however, as to whether Plaintiff or someone else responded to Defendants' requests for admission. In a letter he sent to the Court dated February 21, 2013, Plaintiff states that a Ugandan attorney, Karoli Ssemwogerere, had in fact responded to Defendants' discovery requests—not Plaintiff.[10] In the letter, Plaintiff denies admitting that Pathiranage was the driver and states: "I do not know where Counsel Karoli Ssemwogerere picked such misleading information."[11] Accepting this as true, then Plaintiff's admission that he did not respond to Defendants' proffered requests for admission is itself an admission to those questions. Fed.R.Civ.P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer...."); *Goldman Sachs Specialty v. Brooks,* No. H–09–01547, 2011 WL 1750681, at *3 (S.D.Tex. May 6, 2011) (Rosenthal, J.).

Even absent consideration of the requests for admission, Defendants likewise point to an investigative report prepared by the International Zone Military Police following the incident that similarly identifies the driver as Pathiranage.[12] Plaintiff, on the other hand, does not direct the Court to any evidence to contradict the identity of the driver as Pathiranage.[13] On the contrary, one of the attachments to Plaintiff's response to Defendants' motion to dismiss—the sworn statement of Stephen Douglas Witter—similarly identifies

---

**8.** *Defendants' Motion for Summary Judgment,* Document No. 97, Exhibit B–1 at 13 (*Defendants' First Requests for Admissions to Plaintiff*) [hereinafter *First Requests for Admissions*].

**9.** *First Requests for Admissions, supra* note 8, at 13.

**10.** *Letter from Mutuba, supra* note 3, at 1–2.

**11.** *Letter from Mutuba, supra* note 3, at 2.

**12.** *Defendants' Motion for Summary Judgment,* Document No. 97, Exhibit A–1 at 2, 5 (*Military Police Report*).

**13.** In fact, to date in this litigation, Plaintiff has not served any discovery requests upon Defendants.

the driver as "Chandra." [14] Accordingly, there is no genuine dispute that the driver of the truck that collided with Plaintiff was Pathiranage.

### 2. Employer of the Driver and Owner of the Vehicle

Defendants cite to five different documents on the record to demonstrate, as part of their initial summary judgment burden, Plaintiffs inability to provide any evidence showing a genuine dispute as to the driver's employer and the vehicle's owner: (1) the deposition of PPI Site Manager Colin Orchard ("Orchard"); (2) the deposition of PPI Project Manager Craig Knowles ("Knowles"); (3) the declaration of KBR Procurement Manager Samuel Simmons ("Simmons"); (4) the declaration of KBR Human Resources Manager Janet Curfman ("Curfman"); and (5) the declaration of Halliburton Personal Records Manager Nova Parton ("Parton").

Samuel Simmons testified in his declaration that, as KBR's Procurement Manager at Camp Prosperity, he was "responsible for all procurement-related activities, including KBR's labor support services subcontract with [PPI]." [15] Simmons further testified that PPI established an independent facility—a "Man Camp"—within Camp Prosperity to house PPI employees assigned to work under PPI's subcontract with KBR.[16] According to Simmons, PPI hired "direct-hire" support employees whose sole work at Camp Prosperity was to provide support services exclusively to PPI's Man Camp, including the collection and disposal of waste water, or "black water," by utilizing a PPI-owned, operated, and maintained truck.[17]

According to the deposition of Colin Orchard, the truck that ran into Plaintiff was a PPI-owned truck—in fact the only PPI truck operating at that time.[18] Orchard additionally testified that PPI had two types of employees at Camp Prosperity—(1) those employed by PPI but allocated to KBR, and (2) direct-hire employees assigned to maintenance teams who maintained PPI's camp.[19] According to Orchard, Pathiranage was the driver of the truck that hit Plaintiff, was employed as a direct-hire PPI employee to maintain PPI's camp, was not employed as part of PPI's subcontract with KBR, and never performed work that was billed to KBR.[20] The Knowles deposition states identical facts—PPI, not KBR, owned the truck in question, Pathiranage was the truck driver, was a direct-hire employee of PPI who was hired to support PPI's operations, and was neither employed as a subcontractor of KBR nor performed work that was billed to KBR.[21] Both Orchard and Knowles testified that KBR did not direct the details of the task that Pathiranage was performing at the time of the accident.[22] Curfman and Parton likewise tes-

---

**14.** *Plaintiff's Filing to Cancel/Dismiss Defendant Motion to Dismiss,* Document No. 111 at 9 (*Incident Reports to Colin Orchard*) [hereinafter *Incident Reports to Colin Orchard*].

**15.** *Defendants' Motion for Summary Judgment,* Document No. 97, Exhibit C, ¶ 3 (*Simmons Declaration*) [hereinafter *Simmons Declaration*].

**16.** *Simmons Declaration, supra* note 15, ¶¶ 56.

**17.** *Simmons Declaration, supra* note 15, ¶¶ 78.

**18.** *Defendants' Motion for Summary Judgment,* Document No. 97, Exhibit B–2 at 7–10

(*Orchard Deposition*) [hereinafter *Orchard Deposition*].

**19.** *Orchard Deposition, supra* note 18, at 22.

**20.** *Orchard Deposition, supra* note 18, at 8–12, 14, 36.

**21.** *Defendants' Motion for Summary Judgment,* Document No. 97, Exhibit B–3 at 12–15 (*Knowles Deposition*) [hereinafter *Knowles Deposition*].

**22.** *Orchard Deposition, supra* note 18, at 44–45; *Knowles Deposition, supra* note 21, at 14–15.

tify in their declarations that Pathiranage has never been an employee of KBR or Halliburton.[23]

Plaintiff did not respond to Defendants' motion for summary judgment.[24] Nevertheless, in his response in opposition to Defendants' motion to dismiss, Plaintiff does attach several purported evidentiary items, including five unsworn declarations from other Ugandan security guards. However, none of these declarations is presented in a form that would be admissible in evidence, as required by Federal Rule of Civil Procedure 56(c). FED. R.CIV.P. 56(c). None of the declarations is notarized, and none of the declarations meet the requirements of 28 U.S.C. § 1746—they do not contain the required language that the declarant declares "under penalty of perjury" that the statement is true and correct, some are not signed, and only one is dated. 28 U.S.C. § 1746 (setting forth the requirements of unsworn declarations); see also Longinos–Ruiz v. United States, No. 4:12–CV–400, 2013 WL 1785380, at *1 & n. 1 (N.D.Tex. Apr. 1, 2013) ("[A]lthough [an] unsworn affidavit is incompetent to raise a fact issue precluding summary judgment, the statutory exception in 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affidavit if made 'under penalty of perjury' and verified as 'true and correct.' " (quoting Nissho–Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir.1988))).

Moreover, a number of Plaintiff's attached documents plainly contradict Plaintiff's contentions and concretely support Defendants' positions. An email from Plaintiff's former attorney to Plaintiff, provided by Plaintiff as part of his response to the motion to dismiss, concedes the strength of KBR's evidence:

> If you recall, KBR is denying that it owned the truck and that any KBR employee was driving the truck. **KBR has produced a good bit of evidence supporting this claim.... Their evidence indicates that the owner/operator of the truck was a contractor called Prime Projects International (PPI).** I do not believe we will be able to establish jurisdiction over PPI in an American court.[25]

In addition, two purported incident reports attached to Plaintiff's response in opposition to Defendants' motion to dismiss identify the truck that hit Plaintiff as a black water PPI truck (supporting the testimony of Orchard and Knowles).[26]

In short, Defendants have, as part of their initial burden, provided evidence from multiple managers employed by PPI, KBR, and Halliburton that PPI both owned the truck that struck Plaintiff and employed the truck's driver and that the truck's driver—Pathiranage—was employed solely by PPI and never as part of its contract with KBR. Plaintiff has not filed a response to Defendants' motion for summary judgment. However, even liberally construing Plaintiff's response to Defendants' motion to dismiss as a response to the motion for summary judg-

---

**23.** *Defendants' Motion for Summary Judgment*, Document No. 97, Exhibit D, ¶¶ 2–3 (*Curfman Declaration*); Exhibit E, ¶ 3 (*Parton Declaration*).

**24.** Although failure to respond to a motion for summary judgment is construed as a representation of no opposition under the Local Rules, *see* S. DIST. TEX. LOCAL RULE 7.4, summary judgment may not be granted merely because no opposition has been filed. *John-

son v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam).

**25.** *Plaintiff's Filing to Cancel/Dismiss Defendant Motion to Dismiss*, Document No. 111 at 8 (*Email from Attorney to Mutuba*) (emphasis added).

**26.** *Incident Reports to Colin Orchard*, *supra* note 14.

ment, Plaintiff has not provided a single piece of admissible summary judgment evidence to contradict Defendants' evidence or provide any specific facts demonstrating that any of the Defendants owned the truck, employed the driver, or controlled either.[27]

### 3. Legal Duty Determination

Defendants have satisfied their initial summary judgment burden by demonstrating the absence of any evidence giving rise to a genuine issue of material fact as to the owner and operator of the truck and the employer and manager of the truck driver. Plaintiff has failed to come forward with any specific facts demonstrating a genuine issue of material fact. Accordingly, the unrebutted summary judgment evidence establishes that Defendants did not owe a legal duty to Plaintiff because Defendants had no ability to control the activities of the truck or the truck driver that caused Plaintiff's injuries. *See Petri v. Kestrel Oil & Gas Props., L.P.,* 878 F.Supp.2d 744, 754 (S.D.Tex.2012) (Harmon, J.) ("[Defendant] did not owe a duty to [Plaintiff] because [Defendant] had no ability to control his activities."). Accordingly, summary judgment is granted on Plaintiff's claim for negligence.

### B. Negligent Hiring, Training, and Supervision

■ "An employer has a duty to adequately hire, train, and supervise employees." *C.W. v. Zirus,* No. 10–CV–1044, 2012 WL 3776978, at *2 (W.D.Tex. Aug. 29, 2012) (citing *Patino v. Complete Tire, Inc.,* 158 S.W.3d 655, 660 (Tex.App.-Dallas 2005, pet. denied)). Yet a defendant can-

not be held liable for the tort of negligent hiring if it did not employ the individual whose actions were contested. *See id.* (granting summary judgment to a co-defendant company on the plaintiff's negligent hiring claim because the undisputed evidence demonstrated that the individual codefendant was not employed by the co-defendant company); *Golden Spread Council, Inc. # 562 v. Akins,* 926 S.W.2d 287, 290 (Tex.1996) (holding that the defendant could not be held liable for the tort of negligent hiring because it had not hired the individual whose actions were complained of). Defendants have produced volumes of evidence that indicate that Pathiranage was employed by PPI, and never by any of the Defendants. Plaintiff has not produced any admissible evidence in response. Accordingly, Defendants' motion for summary judgment is granted on Plaintiff's negligent hiring, training, and supervision claim.

### C. Respondeat Superior

■ Plaintiff's Complaint alleges that Defendants should be held vicariously liable under the doctrine of respondeat superior because the individuals responsible for Plaintiff's injuries were acting within the scope and course of their employment for Defendants. "[A]n employee's conduct is considered to fall within the scope of his employment if his actions were (1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed." *Bodin v. Vagshenian,* 462 F.3d 481, 484 (5th Cir.2006) (citation omitted) (internal quotation marks omitted).

As discussed in more detail *supra,*[28]

---

**27.** Nor has Plaintiff directed the Court to any specific evidence raising a genuine issue of material fact, both by not responding to Defendants' motion for summary judgment and by failing to point specifically to any such evidence in his response to Defendants' motion to dismiss. *See Ragas v. Tenn. Gas Pipe-*

*line Co.,* 136 F.3d 455, 458 (5th Cir.1998) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.").

**28.** *See supra* Part III.A–B.

Plaintiff has not met his burden to bring forth any evidence to demonstrate that there is a genuine issue as to whether the driver of the truck was an employee or independent contractor of Defendants. Defendants have produced numerous pieces of evidence to the contrary. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's assertion for respondeat superior.

### D. Res Ipsa Loquitur

■■ Plaintiff alleges that Defendants had sole management and control of the instrumentality that caused Plaintiff's injuries and that such injuries could not have occurred in the absence of negligence. Res ipsa loquitur (translated as "the thing speaks for itself") is an evidentiary doctrine that "is used in certain limited types of cases when the circumstances surrounding the accident constitute sufficient evidence of the defendant's negligence to support such a finding." *Pearson v. BP Prods. N. Am., Inc.*, 449 Fed.Appx. 389, 391 (5th Cir.2011) (per curiam) (quoting *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex.1990)). "Res ipsa loquitur is simply a rule of evidence by which negligence may be inferred by the jury; it is not a separate cause of action from negligence." *Id.* To establish res ipsa loquitur, a plaintiff must demonstrate two factors: "(1) the character of the accident is such that it would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury is shown to have been under the management and control of the defendant." *Id.* The mere fact that an accident occurred is not itself evidence of negligence—a plaintiff must still produce evidence from which a fact finder can reasonably conclude that any negligence is attributable to the defendant. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 251 (Tex.1974).

■ The unrebutted summary judgment evidence shows that, in addition to not owing a legal duty to Plaintiff, Defendants did not own, control, or manage the truck that caused Plaintiff's injuries. Plaintiff has not produced any competent evidence that the truck was under the management or control of Defendants. Therefore, Plaintiff is not entitled to an evidentiary inference pursuant to res ipsa loquitur, and to the extent Plaintiff seeks to assert res ipsa loquitur as a separate negligence claim for relief, summary judgment is granted in favor of Defendants on that claim.

### E. Gross Negligence

■ Plaintiff complains that Defendants were conscious of their conduct in breaching their legal duties to Plaintiff and conscious or indifferent to the rights, safety, and welfare of Plaintiff. The elements of gross negligence under Texas law are: "(1) an extreme degree of risk and (2) a conscious indifference to the rights, safety, or welfare of others." *Scott v. Dorel Juvenile Grp., Inc.*, 456 Fed.Appx. 450, 455 (5th Cir.2012) (per curiam) (citations omitted) (internal quotation marks omitted). Gross negligence is only relevant as to an assessment of exemplary damages, and as such, a claim for gross negligence cannot survive a motion for summary judgment if the court finds that the Defendant did not owe a legal duty to the plaintiff upon which an independent claim for negligence could stand. *Potharaju v. Jaising Mar., Ltd.*, 193 F.Supp.2d 913, 920 (E.D.Tex.2002).

For the reasons stated *supra*,[29] all of Plaintiff's claims for relief have been dismissed due to Plaintiff's failure to cite to any competent summary judgment evidence giving rise to any genuine issue of material fact. Accordingly, summary judgment is granted on Plaintiff's assertion of gross negligence.

---

29. *See supra* Part III.A–D.

*F. Motion to Dismiss*

█ In addition to their motion for summary judgment, Defendants have likewise moved to dismiss this action pursuant to Federal Rule of Civil Procedure 41(b) due to Plaintiff's failure to prosecute and comply with court orders. Pursuant to Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." FED.R.CIV.P. 41(b). Furthermore, a district court possesses inherent power under Rule 41(b) to dismiss cases sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir.1988) (per curiam). "The power to [dismiss cases for want of prosecution] is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Because dismissal with prejudice is an extreme sanction, it is only appropriate when "(1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or … the district court employed lesser sanctions that proved to be futile." *Woods v. Soc. Sec. Admin.*, 313 Fed.Appx. 720, 721 (5th Cir. 2009) (per curiam). The Fifth Circuit has held that providing a plaintiff with multiple chances to comply with an order can constitute a lesser sanction. *Id.*

█ On January 16, 2013, the Court entered an Order granting Defendants' motion to compel deposition and requiring Plaintiff to provide Defense counsel "at least three alternative dates before February 28, 2013, on which Plaintiff, Pascio Mutuba, will be available in Houston, Texas, to give his deposition." [30] The Court cautioned Plaintiff that "his failure to comply with [the] order may result in sanctions, up to and including dismissal." [31] Nearly four months after the issuance of the Order, and more than two months having passed since the Court-imposed deadline, Plaintiff has failed to comply with the Court's Order.

On January 28, 2013, Defendants filed their motion for summary judgment. Plaintiff has not yet responded. On February 5, 2013, Defendants filed their motion to dismiss. On February 22, 2013, the Court issued an Order in which it noted that "Plaintiff has failed to comply with the Orders of this Court and has failed to respond to discovery" and ordered Plaintiff to file a response to Defendants' motion to dismiss by March 13, 2013.[32] The Order cautioned Plaintiff that failure to respond "will result in a dismissal of this case for want of prosecution without further notice." [33] The Court received Plaintiff's response to Defendants' motion to dismiss on April 10, 2013. In his response to Plaintiff's motion to dismiss, Plaintiff now denies that the responses served upon Defendants in response to Defendants' requests for admission were neither made nor authorized by Plaintiff.[34]

---

**30.** *Order Granting Defendants' Motion to Compel,* Document No. 95 at 1.

**31.** *Order Granting Defendants' Motion to Compel,* Document No. 95 at 1.

**32.** *Order Compelling Plaintiff's Response to Defendants' Motion to Dismiss,* Document No. 103 at 1.

**33.** *Order Compelling Plaintiff's Response to Defendants' Motion to Dismiss,* Document No. 103 at 1.

**34.** *Letter from Mutuba, supra* note 3, at 1–2.

Plaintiff's conduct has caused months of delay—Plaintiff has not proffered dates for his deposition nearly four months after being ordered to by the Court and nearly six months after Defendants moved for such order; Plaintiff now concedes that he has likewise not responded to additional discovery in the form of the requests for admission that Defendants served upon him on August 29, 2012; Plaintiff additionally did not timely file a response to Defendants' motion to dismiss, as ordered by the Court. In sum, Plaintiff has not responded as required to multiple attempts at lesser sanctions (court orders) imposed by the Court.

The Court's orders have been explicit that Plaintiff's failure to prosecute would result in a dismissal of his case without further notice. Accordingly, in light of Plaintiff's failure to abide by the Court's previous orders, the Court finds that Defendants' motion to dismiss is appropriate as an independent ground for dismissal with prejudice, and it is granted.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendants' Motion for Summary Judgment (Document No. 97) is **GRANTED.** The Court further

**ORDERS** that Defendants' Motion to Dismiss (Document No. 101) is **GRANTED** as stated herein.

All claims asserted by Plaintiff Pascio Mutuba are hereby **DISMISSED** with prejudice.

The Court will issue a separate Final Judgment.